### THE STATE v. SHORTS ET AL.

1. A public exhibition during which, and as a part of the advertised proceedings, presents were distributed among such of the audience as held tickets which answered to the numbers called at will by the exhibitor, *held* to be a lottery within the prohibitory laws of this state.
2. Nor will the case be altered by the fact that the exhibitor reserves the right to refuse to make any distribution of presents, and may withhold a gift from any person whose appearance does not suit him, although such person may have the ticket with the number called for by him.

---

On indictment. On case reserved from the Mercer Oyer and Terminer.

The charge in the indictment in this case was in these words : That the defendants did publicly set up, open, and make a certain lottery and scheme of chance, under the name and denomination of " The Great Miltonian Tableaux of Paradise Lost, or the Great Rebellion in Heaven," by means of which said lottery and scheme of chance, the said Charles A. Shorts and Robert Tilney then and there did expose and set to sale, amongst other things," &c.

At the Mercer Oyer, a plea of guilty was taken, subject to the opinion of the court, on the form of the indictment and its sufficiency, in connection with the following facts : Mr. Shorts exhibited, in Trenton, a panorama designated as Paradise Lost ; that by a handbill or programme, previously circulated through the city, it was stated that eight hundred costly presents, of various values, would be distributed among the audience who should be present at the exhibition ; that upon entering, each person received from the doorkeeper a ticket, upon which was printed a number. After the close of the exhibition, Mr. Shorts appeared upon the stage and announced he would proceed to make presents to those persons whom he should designate. He then called at will any number, and the person whose ticket had that particular number printed upon it, went upon the stage, and Mr. Shorts, if he considered such person would be a good advertiser for his exhibition, presented him with one of the articles advertised to be given away ; but if he disliked the personal appearance of the party holding such ticket, or if such party refused to advertise and speak well of the exhibition, the exhibitor was under no obligation to give him any present. The articles given away were not numbered to correspond with the tickets, but the presents were selected by Mr. Shorts at will. The programme referred to, contained the following paragraph : " Agreement.—Every person receiving one of the above articles will be expected to act as a canvasser for the exhibition, agreeing to tell as many people of the merits of the exhibition as the article

may, in his judgment, be worth. The proprietor adopts this system of advertising, not to induce the public to attend the entertainment, but simply as an inducement to them to speak of its merits ; neither does he bind himself to carry out this portion of his programme, it being altogether discretionary, and dependent on certain contingencies.

For the state, *C. K. Hall.*

For the defendants, *E. T. Green.*

The opinion of the court was delivered by

BEASLEY, C. J.   In this case there are two matters for decision—the one relating to substance, the other to form.

The first of these questions—and that is the material one —is, whether, in point of fact, the defendants have set up a lottery within the prohibition of the statute of this state, in that respect.   The act referred to declares that " all lotteries for money, ·goods, wares, merchandise,` chattels, lands, tenements, hereditaments, or other matters or things whatsoever, shall be and are hereby adjudged to be common and public nuisances," and that all persons who " shall, within this state, publicly or privately, erect, set up, open, make, or draw any such lottery," is made liable to indictment.

On the argument it was insisted that the· transaction now in question before this court was not a lottery, on account of the presence in it of the element of free will, on the part of the exhibitor, with regard to the distribution of presents. The conduct of the affair was this : each person, at the door of the show, got a ticket with a number upon it.   At the close of the exhibition, one of the defendants called, at will, any number, and the person holding the corresponding ticket, presented himself, when, if the exhibitor liked his appearance, he presented him with one of the articles advertised as gifts.   It was also one of the terms of this project, that, at the option of the defendants, the circumstance of a

distribution of presents should be dispensed with. It was this control, or reserve of power, in the proprietors of the show, which was relied on to prevent the contrivance from possessing that fortuitous quality which in law is essential to the constitution of a lottery. But this line of argument is far too subtle to be sound. Taking a practical view of the thing, its real nature cannot be misunderstood. It is clearly a lottery, if tested by any of the ordinary definitions of that term. A lottery, says Johnson, is a "game of chance; a distribution of prizes by chance." This ingredient of chance is, obviously, the evil principle against which all prohibitory laws are aimed. It is by this means that cupidity is solicited, for, if fortune be propitious, in consideration of the trivial price of a ticket, a return of value is to be expected. This temptation was, undoubtedly, offered to the public by these defendants. It is true that in this particular scheme the chances of profit would appear, to a considerate observer, to have been quite unduly in favor of the projectors. Indeed, the chances of the ticketholder were precarious in the extreme. He had various risks to run; first, he must find the exhibitor in a mind to distribute gifts; second, the number of his ticket must tally with the number called; and third, his personal appearance must receive approval. The chances of success were, therefore, slender; but still there was a chance of a disproportionate gain, and the offer of this or any other such chance, is the stimulus to the spirit of gaming which the law prohibits. Any person who obtained a gift, as it is called, under the operation of this scheme, owed his success to his fortune in drawing from the door-keeper the ticket with the lucky number upon it. But for this fortuitous circumstance he would have failed, and it was this opportunity which he purchased with his ticket. In fact, it may be said with truth that the winner in this particular lottery has had a series of strokes of good fortune, for he has found, by accident, the projector in the propitious mood; he has drawn the favored number, and he has not been rejected on account of his personal appearance—circum-

stances which look like the results of mere casualty, for it is not pretended that the projector, either in the matter of volition as to the giving of presents, or of approbation as to the recipients of them, founds his action on any settled rules of conduct which would appear reasonable to himself or to others.

My conclusion is, that this was a game of chance, and consequently a lottery, and none the less so because of those reservations of control over it, by the adroit use of which the getters-up of the game were sure, in all substantial respects, to be the winners. It is an affair conspicuously within the mischief at which the statute is levelled : the particular traits of it, above noticed, appear like devices to evade the law. But the law regards not mere semblance, but the substance of things, and consequently these devices, however ingenious, cannot be successful. The defendants, in carrying into effect the programme above specified, committed an offence indictable by the laws of this state.

With regard to the second point, I think the objections to the indictment must prevail. It does not contain that certainty in the description of the offence which is essential in criminal pleading. The act prohibits "lotteries for money, goods, &c." This pleading, in charging the offence, does not allege that the lottery set up by the defendants was for money or anything of value. It is true that afterwards it avers that the defendants "by means of said lottery and scheme of chance" "did expose and set to sale" certain articles. But the statute is silent as to the sale of things by lottery, and although this statement of a sale may imply that, in some possible way, there was a disposition of things of value by lot, yet this necessary circumstance should not be left to conjecture. At all events, it is clear the proof does not sustain this allegation of a sale, and as the allegation, in the form in which it is pleaded, is material, the case of the state must fail on this present record.

Let the Oyer be advised accordingly.

CITED in *State* v. *Lovell*, 10 *Vroom* 462.